05-1437 Mr. Nichols when you are ready. I'm glad you didn't come in regalia relating to this case. I thought about getting my game face on. We have no sunlight here. May it please the court, Steve Nichols on behalf of Mueller Sports Medicine. Mueller is challenging the district court's claim construction of three elements, replaceable, pliable sheet material, and pressure sensitive adhesive. For two of those elements, pliable sheet material and pressure sensitive adhesive, Mueller also contends that factual disputes should have precluded summary judgment. Replaceable. Claim one of the 909 patent recites an under eye light absorbing patch comprising a replaceable patch. The district court construed replaceable to mean repositionable for the duration of an average game of football, baseball, basketball, tennis, or golf. Now, that construction is erroneous for two reasons. One, we believe the term replaceable should not be construed to require any repositionality. And two, even if repositionality is going to be required, the district court erred in requiring this type of enduring repositionality that lasts for the entire sporting event. Doesn't this case really hinge on the pliable sheet material or the lack of same? I think that absolutely is a key issue. As to the pliable sheet material, I think we kind of have two issues there. One is the district court's requirement that the pliable sheet material have a certain resiliency. The court talked about, gave examples of certain materials that it has to be akin to. In addition, it said that the pliable sheet material needs to be able to withstand repeated bending, be susceptible to die cutting or stamping. We don't think any such resiliency is required. All that is required, and if you look to the specification at column 3, lines 43 through 44. But it has to have a sheet material, right? I agree, and the BMC product does have a sheet material. A sheet material distinguished from the adhesive means and the light-absorbing surface? That's right. What we're getting into here is how does the pliable sheet material decided in claim 1 relate to the light-absorbing surface and the pressure-sensitive adhesive? The claim language. What is the pliable sheet material in the accused device? Well, what is the pliable sheet material? In the accused device, yeah. I don't know exactly what it's made of. What is it? The ink? Excuse me? The ink? The ink would serve as the pliable sheet material. The ink is pliable? That's right. The ink is a sheet material? Well, what we're getting into here is how there's testing. What we're getting into here is whether or not there is something that's missing in the accused device that's called for by the claim. That's right. So I'm asking what is it? The product is in the record. You can hold it up. It is a thin, solid, pliable sheet material. There was testimony below about how the BMC product is manufactured, and it was that there was a pair of ink laid down. That is allowed to dry. There's a layer of adhesive applied over that. That gives the impression that what we have here is almost a non-solid material, as if there's an ink transfer when you put this product on. That's not the case. This product, the BMC product, is a pliable sheet material patch. It's sticky on one side, and it's dark on the other. That is what the claims require. The claim language is that the product recites a pliable sheet material. Well, that's not quite what the claims say. The claims say that there's this pliable sheet material, and then the claim goes on to say, refer to the first face of the pliable sheet material and the second face of the pliable sheet material from which Judge Crabb. Have I got the right? That's correct. All right. Judge Crabb's conclusion was that this has to be something. There has to be three parts. In other words, there's something attached to one face of the sheet material and something attached to the other face. And your argument seems to really come down, in essence, to be, well, no. Two parts are sufficient. It doesn't require three because you can have the light-absorbing material and you can have the adhesive material that do the work of all three parts of the claimed invention. That is correct. And to be as clear as I can, we certainly can see that the claim requires three elements, a pliable sheet material, a light-absorbing surface on a first face of the pliable sheet material, and a pressure-sensitive adhesive on a second face. But that does not require a structural separation of the three elements. Well, let me ask the question this way, and I think we're talking about the same thing. If the adhesive has to be on the second face of the pliable sheet material, what's the pliable sheet material to which the adhesive is attached? We talked about this in our reply brief about how it may form the pliable sheet material, and we gave several examples of how it may happen. The ink itself may be applied in a carrying agent that, when dried or cured, forms a solid pliable sheet material. Likewise, or similarly, the ink and the pressure-sensitive adhesive, when applied together, could react to form a substrate between the two. That would then be the pliable sheet material. I think the claim language here is telling in two respects. I said a moment ago that certainly three elements are required, but there's not structural separation required. And when I say in two respects, one is what the claims do not recite. The claims do not say that the pliable sheet material is between or separating the light-absorbing layer from the pressure-sensitive adhesive. What the claim does say is that there is a pressure-sensitive adhesive on a first face and a light-absorbing surface on a second face. The word on contemplates structural combination as well as structural separation. On is defined as something that is in or in contact with another surface. So using that definition of the word on, you could read that the pressure-sensitive adhesive and light-absorbing layer, for that matter, is in or in contact with the pliable sheet material. So it can be in the pliable sheet material. In addition, we're talking about this issue of can one structural element satisfy two claim elements, meaning one structural element in an accused device satisfy two claim elements? I think the answer is yes. Suppose that what we had here was a substance which happened to have the attributes of – a single substance had the attributes of being black and also being sticky. And you just put the substance on the orbit and you're done. Would that infringe? Well, when you say is this a – I mean is the product, the kind of finished product that you're applying, is that also in this hypothetical? There is a place in Brazil that you can dig into the ground and you come up with something that's sticky and black. And sure enough, somebody markets it as a substance that can be put on the lower orbit of the eye. If what you're describing in the hypothetical is… Tar. Exactly, tar or some other kind of – like grease paint, which is the prior art. But it can be pulled off and it's just – it has – it's not something that – I mean it can be attached. It can be put in a little container and attached separately so it satisfies that. Like a piece of pliable bubble gum. Kids all the time stick it on their arm and then pull it off and park it while they're not chewing it. Black piece of bubble gum, I'd say. Would that infringe? I think the answer is yes because it would still be pliable. What would be the first face of that substance to which the adhesive would be attached and what would be the second face to which the coloration would be attached? I think the first and second face are just the opposing sides of – I mean this material has, even in the hypothetical, has a thickness. And it's going to have one side and another side. Aren't you really saying that if we decide that there are three layers and not two, then you lose? That's right. I mean that's just cut to the chase, right? If the score requires that the claim construction – You're a two-layer man. It requires kind of that you can cut it, take a cross-section, and you get kind of a three-layer sandwich, you're right. We would not have – Can I ask about the pressure-sensitive adhesive means for strippable adhesive retention? As I understood the accused device, you take the accused device and you put it wherever you want to put it and by pressure it will stick. It will stay on the face. That's correct. But if you started sweating profusely, it would fall off. That's what I understood because I understood the reason why it will stay on during perspiration, which is required by the claim, was because of a water-soluble means. You take the accused device and once you wet it, it in essence causes that ink to go onto your skin, right? And so the adhesive – the staying on in order to be able to be resistant to perspiration is not as a result of a pressure-sensitive adhesive mean but because of the saltwater soluble. Isn't that correct? No, it's not. A two-part answer to that, one based on what the facts show and then second I'll address the claim construction portion of that. As to the facts, if you turn to JA 678, that's the – it's the testimony of an athletic trainer from the University of Tennessee. And if you look, paragraph 13 starts on 677, leads over to 678. He talks in paragraph 13 about how he had two different – he had different samples and then some products that he purchased from BMC. And one of them, the instructions specifically said use water in the application process. One did not. What he said, the BMC strips were always most easily applied by peeling away the paper backing and positioning the product over the cheekbone of the face. He talks right above that about how his athletes applied the product without using water. Well, there's no question but what you can stick it on your cheekbone. I just practiced with the things that you all sent in to us. It'll sort of sit there, right? But you wink a few times or shake your head pretty hard and it'll fall off. Well, in the very next paragraph – Right. What's it say? I think that's refuted by the very next paragraph. He says that the product was used during a football game and the product did not migrate or slide off the face. But he doesn't tell you whether or not he used water, right? Well, what Mueller's position is that these two paragraphs, with all reasonable inferences drawn in favor of Mueller, could lead to a conclusion that they applied the product without using water and that it then did not slide or fall off the face when used during a football game. So we think – that was my point about how there's a factual dispute as to whether water even does strengthen the adhesive bond here. But in addition, on the claim construction side of this, we think that the district court required too limiting of a claim construction here. What she required is that pressure-sensitive adhesive is limited to adhesives that are sensitive only to pressure. The BMC product has only one type of adhesive on it. The testimony was that there was an adhesive applied, not two different types, not a pressure-sensitive and then a water-based one. So apparently, if BMC is to be believed that water, in fact, strengthens the bond, this one adhesive is sensitive both to pressure and to water. Mr. Nichols, you're into your rebuttal time. You can use it or save it. I'll take 20 or 30 more seconds on this pressure-sensitive adhesive and save a couple of minutes. The transitional term in the claim is comprising, and it says that it comprises a pressure-sensitive adhesive. And it is our position that any adhesive that is sensitive to pressure, even if that adhesive is also sensitive to water, heat, or something else, is considered a pressure-sensitive adhesive. It was overly limiting for the district court to say pressure-sensitive adhesives, as that term is construed by those of skill in the art, are limited to adhesives that are sensitive to only pressure. We'll save the rest of your time. In the meantime, we'll hear from Mr. Boggs. Mr. Boggs. Thank you, Your Honors. May it please the Court. I would like to start with the term pliable sheet material because I believe that this case does begin and end with this element. We believe that the claim calls for three structural features. You just can't ignore them in this claim. I call these structural features a sheet material, an adhesive, and a light-absorbing material. I usually, in shorthand, I call it a sheet material core because that's what replaceable patches are built around, and that's what this claim is built around, if you look at the structure of the claim. Now, from the beginning of this case, the appellant has been attempting to equate these words, pliable sheet material, with either the adhesive or the light-absorbing material or a combination of both. But they're wrong on all accounts. The pliable sheet material is a separate structural feature in this claim. Is there anything in the specification that supports that argument? Yes, there is, Your Honor. Can you point to it? Yes. Column 2, I believe, line 29, that's at the joint appendix on page 27. You can see that exact word pattern, pliable sheet material. But doesn't that just beg the question of whether it's independent or whether it's two-sided? I'm sorry, Your Honor, I didn't hear. Well, I see it says pliable sheet material. Those are the words in the claim, right? Right. It said it may be used. Yes, a pliable sheet material may be used as the body layer. That's what that example shows. But even then, it tells you that it is a structural element. Is there any other support in the specification for the three-piece structure that you advocate? Well, there are two other uses of pliable sheet material in this written specification, and it's used in the same way as you see in the claim here. They call it a replaceable pliable sheet material patch. That's in Column 1 at about line 46, 47, and then Column 1 again at 58 through 60. But another place that you see not the words pliable sheet material but you also see the word sheet material is in Claim 2, which is naturally a dependent claim from Claim 1, and they actually define what the sheet material is. Claim 2? Claim 2. It says it's a medical-grade tissue sheet material. So any way you slice it here, there's at least three different structural elements required by Claim 1, the pliable sheet material, the adhesive, and the ink. That's a dependent claim, right? Claim 2 is a dependent claim? Yes, it's a dependent claim. So maybe it's adding the limitation that you have this medical-grade sheet material? I don't believe so. Well, why not? I mean, and that then would make sense out of the point you made on Column 2 where they're talking about a medical-grade air permeable tissue? Well, I believe if the claim said further comprises a medical-grade tissue that it would be an additional element, but I think the natural reading of Claim 2 is it's further defining the sheet material that's referred to in Claim 1. As well as the adhesive? Yes. So we have these three structural features. I believe that the appellant in the argument said that they agree there must be a sheet material, and unless they can show that our product has the three elements called for by the claim, there just simply is not infringement of this claim. And the appellant has offered absolutely no evidence of the existence of three structural elements. They have from time to time referred to the entire structure as being pliable or in a sheet form, but that's not the same thing as pointing to three distinct elements. So in the end, the district court just got this exactly right on this point. The district court said the sheet material means something other than the dye and the adhesive. That's in the decision in the Joint Appendix at page 19. And the district court said the defendant's product has only a layer of ink and a layer of adhesive and no pliable sheet material in between. That's in the Joint Appendix at 17. And she's right on both accounts. And all it takes is for us not to have one limitation of this claim to avoid infringement. I would also like to talk a little bit about the pressure-sensitive adhesive. This limitation actually comes from the claim, and it reads, pressure-sensitive adhesive means said adhesive means being resistant to perspiration to retain said patch on said skin area during exercise. So it looks a lot like a means plus function clause, except here they tell you what the means is. They give you the structure, if you will. It's the pressure-sensitive adhesive. Well, Mr. Nichols pointed to some affidavit that was supplied by somebody who went to the Peach Bowl who claimed that he saw this device applied with no water and it stayed on during the game. If that's true, wouldn't that preclude summary judgment on that limitation? I don't believe that characterization is true. Well, actually, that wasn't my question. My question was if it's true. Well, yes, if the simple tack that you feel. It's tacky enough that when you put it on, if you give it a little pressure, it doesn't fall off if you remain still. And I submit that if you would run out onto the football field, it would fall off in that state. Well, whoever that fellow was at A67778 seemed to think that he saw a player run out on the field and didn't fall off. I don't believe it says that, Your Honor. I think there's a jump in the logic there. He makes a statement that he believes that you could apply them without water. He does not say that that was actually done. We said both the strips I utilized were repositional only during initial application period of two to five minutes, right? Okay. Where are you reading? On page 678. Okay. Paragraph 13. Yes. Next to last sentence of that paragraph. So you'd be willing to concede that that may be true, but that still isn't going. If the device doesn't remain in place, say, after two to five minutes in a perspiration environment, right? Right. I do not believe that you can draw a justifiable inference. Well, the inference you would have to draw is in paragraph 14. Between the first and second sentence, the affiant said, I witnessed no water ever being applied to the BMC strip. Right. However, the product did not migrate or slide during the course of the contest, right? Yes, and that's exactly the conclusion that the judge came to, that there's no evidence that anyone ever tested these things without water and also exercised with them on. And that is truly the test that you would have to do. The pressure-sensitive adhesive has to serve the stated function of the adhesive, which is to keep it on during the exercise. And the patent, the claims requiring the device to remain in place as a result of a pressure-sensitive means not because of ink or because of glue or something else. Right. Yes, it says right there in the claim, said adhesive means being resistant to perspiration to retain said patch on said skin area during exercise, not during application, during exercise. And that's a different thing. The testimony that we see from these trainers, they're talking about applying the patches. They're speculating as to whether you really need water to apply them or not. They are not testifying. I don't believe that that was actually done in the Peach Bowl. I think they applied them with water. I don't know why they would do it differently. The third element. Is there a large market for these products? Yes, there is, Your Honor. I have to say that the pro football players seem to like that tarry stuff that Joe Namath used to wear. Yes, the actual grease paint, which is what I'm most familiar with from my past. But the schools and the kids and the people that use them actually like all the logos. Logo driven. Yes. And so they're very popular. And the patches, you can take them off and put them back on. The temporary tattoos, however, once they're on there, they're really stuck. And they're really hard to get off. I manage a little league baseball team, and one of the worst decisions I ever made was to give those kids temporary tattoos to put on their faces. Better than real tattoos. True. Better than real tattoos. Yes, Your Honor. We believe replaceable then simply means that you can take off one of these patches, you take it off in one piece, and you can put it back on. And the lower court used the term repositionable. And the lower court was right. The judge was trying to give some meaning to the term. And at summary judgment, we all agreed on that term. We agreed. But when the judge said it has to remain in place during the duration of the event, that was a little extreme, wasn't it? Well, it was a little extreme. But I think the point there is that it has to be useful for its intended purpose. In other words, you have to put it on there, and it has to stay on there during exercise, whatever that exercise may be. The specification expressly says these are very useful devices for our troops in combat. I saw that. Right. And those games, not games, those events last longer than 60 minutes. Yes. Yes. So it seemed a little odd that the patent requires that the thing remain in place during a combat mission. I believe that's true. And I think that was a – that part of the specification was more of a vision than applying the actual use of these things, which is for athletic events. As you said, they're very – you see them on TV. You do see them. People use them. But I think if you read – if you give a natural reading to the claim, the word exercise is there, and the idea is that you would want them to stay on for the duration. Anything further, Mr. Boggs? I'm sorry. Anything further? No. No. I think we have your argument. Thank you. Mr. Nichols has a little time left. A couple of quick points on this pliable sheet material requirement. One term that has been thrown about is it was discussed as though it was pressure-sensitive adhesive or light-absorbing layer attached to a pliable sheet material. That's not what the claim says. It doesn't say attached to. It says on. We talked before about what on means. And there's nothing else in the specification or in the intrinsic record at all that requires structural separation of the three. In fact, even if you look to figure two in the patent, which is an exemplary argument. We're not saying we're limited to this one figure. But you see here, number 11 refers to the pliable sheet material. It's merely showing the point where the pressure-sensitive adhesive and the light-absorbing layer come together. There's not this. BMC is arguing for kind of this thick reinforcing core in the middle. That's not shown there. It's not required by the claims. It's not contemplated anywhere else in the patent. And another thing here is with the fact that BMC discussed the way in which their product is made, there's been some focus on this manufacturing process. Our patent is not a product-by-process claim. At the end of the day, our claims simply require a product that has the features of it. It's pliable. It's a thin, pliable sheet material. And it's dark on one side and sticky on the other. That's what the BMC product is. Finally, we talked about this issue of can one structural element in an accused device meet more than one claim element. I've got a case site on that point. I'll be brief on that. It's an old CCPA case, Kelly, 49 CCPA, 1359. And this court has cited two of that. That case was actually in the patentability context. I actually have an unpublished case that deals with the infringement context. You don't want to cite that? I'm not going to cite that. If this is the central issue, whether one structural element can meet more than one claim element, Mueller is certainly more than happy to offer a supplemental briefing on that one issue. We know the point. Thank you, Mr. Nichols. The case will be taken under advisement.